```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
UNITED STATES OF AMERICA,                 :
                                          :
          -v-                             :
                                          :         15cr0140(DLC)
JORGE POLANCO URENA,                      :
a/k/a "Jorge Polanco"                     :         OPINION & ORDER
                                          :
               Defendant.                 :
                                          :
------------------------------------------X
```

APPERANCES

For the Government:

Amanda Leigh Houle
Max Clement Nicholas
Assistant United States Attorneys
United States Attorney's Office
One St. Andrew's Plaza
New York, NY 10007

For Defendant:

Luis O Diaz
Luis O. Diaz, Esq.,
710 West 190th Street
Suite D
New York, NY 10040

DENISE COTE, District Judge:

On September 11, 2015, defendant Jorge Polanco Urena moved to suppress wiretap evidence obtained pursuant to a Title III Order, and the fruits of that electronic evidence.  Urena contends that the information contained in the affidavit supporting the Title III application was stale because the meetings with the conspirators described in the affidavit ended

"more than a month" before the application, and the affidavit provided "no reason to believe any of the alleged criminal activity was still taking place." For the following reasons, the motion is denied.

**BACKGROUND**

On August 26, 2014, this Court granted the Government's application for a Title III warrant authorizing interception of conversations and messages over a cellphone believed to belong to Urena's indicted co-conspirator Andradys De Jesus Agramonte Melo ("Cellphone"). The affidavit supplied in support of the application described an ongoing scheme to use stolen identities to obtain tax refunds fraudulently from the IRS and to steal U.S. Treasury checks from the mail and cash them. The detailed affidavit included a description of the following incriminating activities by Melo and his indicted co-conspirator Juan Carlos Reyes.

An informant advised FBI agents in the Winter of 2014 that Melo was working with others to fraudulently obtain and cash United States Treasury checks. Between March 21 and July 14, 2014, the informant spoke with and met with Melo to discuss the scheme. Many of their interactions were consensually recorded and included calls over the Cellphone. Melo's recorded statements referred to an ongoing scheme in which he was working

2

with others.  On April 22 and 30, Melo provided the informant with checks to cash.

The informant succeeded in introducing an FBI undercover agent to Melo, and beginning on May 14, Melo provided checks directly to the agent to cash.  Melo provided more checks to the agent to cash on May 22 and July 7.  The informant paid Melo the amount owed for the July 7 checks on July 14.  The July 14 meeting is the last meeting with Melo described in the affidavit.

The affidavit explained as well the basis for believing that the Cellphone, which became active on February 14, 2014, remained active.  It included an analysis of toll records for a period of weeks through August 19, 2014.

Following interceptions made pursuant to the August 26 Title III Order, a Magistrate Judge entered an order on September 22, 2014 authorizing use of a pen register and/or trap and trace device on a telephone believed to be used by Urena.  On September 26, a similar pen register order was issued for the Cellphone.  On October 3, a second Title III Order was issued for the Cellphone.  The list of target subjects in that application included Urena.

On May 11, 2015, Urena and four others were indicted on federal criminal charges.  Trial is scheduled to occur on

January 11, 2016.  No other defendant has made a pretrial motion.

In his motion to suppress, Urena argues that the August 26, 2014 Title III Order should not have been issued because the information in the affidavit supporting the application for the Order was stale.  He contends that information obtained pursuant to that interception Order must be suppressed for that reason, and that evidence obtained pursuant to the subsequent pen register orders and Title III should also be suppressed as tainted.

## DISCUSSION

The interception of oral communications is governed by Title 18, United States Code, Section 2518.  To authorize a wiretap, a federal court must determine, on the basis of facts submitted by the applicant, that

> there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; and (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap.

United States v. Diaz, 176 F.3d 52, 110 (2d Cir. 1999); see also 18 U.S.C. § 2518(3).  The standard for probable cause applicable to § 2518 is "the same as the standard for a regular search warrant."  Diaz, 176 F.3d at 110 (citation omitted).  Probable

4

cause is established if the "totality-of-the-circumstances indicate a probability of criminal activity." Id.  The judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Raymonda, 780 F.3d 105, 113 (2d Cir. 2015) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Information presented in support of probable cause cannot be "stale."  Raymonda, 780 F.3d at 114.  "The law recognizes no bright-line rule for staleness, which must instead be evaluated on the basis of the facts of each case." Id. (citation omitted).  Two key factors to determine staleness are "the age of the facts alleged" and the "nature of the conduct alleged to have violated the law." Id. (citation omitted); see also Diaz, 176 F.3d at 109.  "Where the affidavit establishes a pattern of continuing criminal activity, such that there is reason to believe that the cited activity was probably not a one-time occurrence, the passage of time between the last alleged event and the . . . application is less significant." Raymonda, 780 F.3d at 114; see also Diaz, 176 F.3d at 109-10 (gap of one month did not render information stale for wiretap in narcotics investigation).

5

Urena's motion is denied. The affidavit supporting the August 26, 2014 Title III Order provided strong probable cause to find that there was an ongoing scheme of unlimited duration to wrongfully obtain the proceeds of U.S. Treasury checks. The sales of the U.S. Treasury checks over a period of months, as well as Melo's conversations with the informant and agent, provided a firm basis to find a pattern of continuing criminal activity. The last act in furtherance of the criminal scheme that was described in the Title III affidavit occurred roughly six weeks before the Title III Order was issued. This was sufficiently close in time to the application for the Order.

Moreover, the affidavit provided reasons to find that Melo's Cellphone was still in use and that the interception of calls and texts over that telephone would provide evidence of an ongoing criminal scheme. The affidavit presented evidence of use of the device up to about one week before the application. Because Urena has not shown that the evidence obtained pursuant to the first Title III Order should be suppressed, there is no reason to suppress any of the evidence obtained from the pen register order or the second Title III Order.

**CONCLUSION**

The September 11, 2015 motion to suppress is denied.

Dated: New York, New York
September 30, 2015

```
                              _____
                              DENISE COTE
                              United States District Judge
```